Filed 7/24/26  P. v. Gonzalez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>    v.<br><br>JORGE GONZALEZ,<br><br>Defendant and Appellant. | B344643<br><br>(Los Angeles County<br>Super. Ct. No. YA076269) |

APPEAL from an order of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 2013, a jury convicted defendant Jorge Gonzalez of first degree felony murder and found true the special circumstance that the murder was committed during a robbery or attempted robbery. The jury found not true various firearm allegations and acquitted defendant on an additional charge of shooting at an occupied motor vehicle. In 2025, the trial court held a hearing on defendant's petition for resentencing under Penal Code section 1172.6.[1] The trial court denied the petition, finding that defendant was the actual killer or, in the alternative, he was a major participant in the underlying felony who acted with reckless indifference to human life.

On appeal, defendant contends that the jury's not true firearm findings and acquittal of shooting at an occupied vehicle precluded the trial court from finding him guilty of murder as the actual killer. Defendant also makes the alternative contention that there was insufficient evidence that he acted with reckless indifference to human life. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We grant the Attorney General's request for judicial notice of the record in the prior appeal. (*People v. Gonzalez* (2016) 246 Cal.App.4th 1358.) We derive the following facts from the opinion and record in that appeal. No new evidence was introduced at the evidentiary hearing (§ 1172.6, subd. (d)(1)).

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

I.    *Prosecution's Evidence*

On October 6, 2009, Anthony Kalac,[2] Alfonso Garcia, and Garcia's girlfriend, Jennifer, went to hang out with defendant and his girlfriend, Erica Estrada, in their room at Crystal Inn.  While they were hanging out, Estrada suggested to defendant and Garcia that they could "come up on" or "rob" her ex-boyfriend, Victor Rosales.  Estrada described Rosales as a drug dealer who had been "physical" with her.  Defendant became visibly agitated.  Estrada, Garcia, and defendant talked about robbing Rosales.  They decided to order drugs from him.  Garcia volunteered to act as a lookout.  Estrada asked Kalac for money to pay for a room at another hotel and in exchange, she would give him heroin from the robbery.  He reluctantly gave her the money.

Estrada told everyone to be quiet so she could call Rosales.  She called Rosales and told him to meet at the laundromat across the street in 30 minutes.  After this conversation, Garcia and defendant left for the laundromat.  Estrada began packing to move out of the hotel room.  She then called Rosales again to find out when he would arrive at the laundromat. She either made or received another call and told someone that Rosales was 10 to 15 minutes away.

Estrada checked out of the hotel, and Kalac and Jennifer helped Estrada load her bags into a car in the parking lot.  They all got into the car and Estrada drove to the American Inn, just south of the Crystal Inn. Estrada checked into the hotel and the trio brought the bags into the room. Estrada made or received another phone call and told the person on the line

---

[2]    Anthony Kalac testified under a grant of use immunity.

that she would "be there in two minutes." Estrada left shortly thereafter with Jennifer, leaving Kalac in the hotel room alone.

After several minutes, Kalac decided to go home. As he was walking down the street, he saw Garcia and defendant on the other side of the street. Garcia crossed over and told Kalac that "shit went bad." Defendant continued walking on the other side of the street and Kalac did not see where he went. Kalac and Garcia then walked to the American Inn. Garcia changed his clothes, and the two men walked back to Garcia's house.[3]

In 2009, Rosales was living in a house with his two sisters and mother. On October 6, 2009, Rosales told his sisters that he was going out but would be "right back." Shortly thereafter, Alejandro Ruiz drove up to the house in his car. Ruiz got out, looked nervous, and told one of Rosales's sisters that her brother had been shot. Rosales was in the passenger seat and was not moving. When asked "who had done that" to her brother, Ruiz responded it was Estrada. The sister noticed a bullet wound in Rosales's stomach. Rosales was taken to the hospital where he was pronounced dead. Rosales's mother told police that Estrada would call her son for drugs.

On October 6, 2009, at 2:40 p.m., police responded to Rosales's house. The responding officers observed a single gunshot wound to his chest. Ruiz gave the following account of the shooting that day. Around 1:00 p.m., Ruiz

---

[3]     Kalac's girlfriend, Stefanie San Angelo, spoke to police about the incident. Kalac's version of events to her was substantially similar to his trial testimony, including that defendant, Estrada, and Garcia planned a robbery, and Kalac stayed in the hotel room when they left to commit the crime. However, Kalac told her that Garcia was the mastermind of the robbery, Garcia was the one who shot and killed Rosales, and Garcia gave the gun to Kalac to dispose of after the shooting. Also, Kalac told her that the assailants shot at Rosales as he tried to drive away, and Kalac had walked past the victim after the shooting.

4

received a call from Rosales asking for a ride. Ruiz picked up Rosales at approximately 2:16 p.m. When in the car, Rosales told Ruiz that his girlfriend, Erica, called and wanted to meet Rosales for lunch. She asked him to meet her at a laundromat on Prairie and 112th Street. When Ruiz and Rosales arrived at the laundromat, Ruiz parked his vehicle at the curb. He saw Erica, accompanied by two men, walking out from behind two palm trees. Erica pointed at Rosales, and one of the men walked up to the passenger side door, produced a small handgun, and fired a single shot at Rosales. The shooter then walked around the car to the driver's side and attempted to pull Ruiz out of the vehicle. Ruiz hit the accelerator and drove away.

The medical examiner performed an autopsy on Rosales. A .22-caliber bullet was recovered from his body. The examiner opined that Rosales died from the gunshot wound. According to the medical examiner, when a gun is discharged, particles coming from the muzzle may strike the skin and leave small marks, called stippling. He observed stippling on Rosales's right hand, in the wrist area. No stippling was found on the gunshot wound or anywhere else on Rosales's body. These findings suggested that the gun was within two feet of Rosales's wrist, but more than two feet from Rosales's chest, when it was fired. He observed no other signs of injuries, such as defensive wounds to the hands.

Ruiz's vehicle was impounded. A .22-caliber cartridge casing was found in the vehicle. Gunshot residue tests were performed on swabs taken from Estrada's and defendant's hands. Gunshot residue was present in defendant's samples, but not in Estrada's.

II.    *Defense Evidence*

Defendant testified in his defense.  He testified that on October 5, 2009, Estrada surprised him with a birthday party at the Crystal Inn.  Defendant and Estrada were intimate; however, defendant did not consider her his girlfriend.  He also knew she was dating Rosales.  Defendant met Rosales on two prior occasions.  On both occasions, he purchased drugs from Rosales, using Estrada's connection with Rosales.

After the birthday party, around 10:00 p.m., Estrada left the hotel and went out with Rosales.  Estrada returned to the hotel around midnight.

The next morning, Garcia and Kalac came to the hotel room.  Defendant knew Garcia because they went to the same high school.  Kalac looked like he was on drugs.  Garcia asked defendant to "pack a bowl," and defendant replied that they had no drugs.  Defendant then asked Estrada if she wanted to call Rosales to buy some drugs.  Estrada told Kalac she could get him $50 worth of heroin for $30.  She then called Rosales.

Defendant denied that anyone spoke about robbing Rosales.  He did not have a gun or see any guns, and there were no discussions about guns.  Defendant also stated they planned to move to another hotel.

After Estrada finished speaking with Rosales, defendant left the hotel to meet Rosales at the laundromat across the street.  Defendant asked Garcia to come with him, and Garcia agreed.  There was no mention of Garcia being a lookout.

Defendant waited outside the laundromat for 20 to 30 minutes.  He then began walking toward the corner of Prairie and 112th, where he noticed Rosales sitting in a car with the window down, looking at him.  He walked over to Rosales, and said, "What's up, Victor?" Rosales did not respond.  Defendant repeated his greeting, but Rosales remained silent.  Defendant

6

then asked, "Do you want me to get Erica?" Rosales responded by raising a handgun in his right hand. In fear for his life, defendant grabbed the gun and was able to take it from Rosales. Defendant now had "complete control of the gun." His right hand was "fully gripped" on the right side of the handle, with his right index finger on the trigger, and his left hand was on the left side of the handle. Rosales tried to retrieve the gun (now in defendant's right hand) and used both hands to grab defendant's right wrist. As defendant pulled away and turned his body, the gun discharged. Defendant denied intentionally pulling the trigger or trying to kill Rosales.

Defendant ran from the scene and walked into the laundromat. He waited for Rosales's car to drive away. He then left the laundromat and found Garcia standing nearby. Defendant was unsure where Garcia was when the incident occurred. Defendant and Garcia walked along the street, where they encountered Kalac. Kalac said, "We're at the American Inn. We got a room." Defendant gave Kalac the gun because he was scared of holding onto it. He did not tell Kalac to dispose of the gun. An acquaintance who happened to be driving by picked up defendant (but not Garcia) and dropped him off at 105th Street. Defendant gave the driver $70 and told him to tell Estrada to get another hotel room.

Defendant called another acquaintance to give him a ride. While in the car, defendant called the first acquaintance and learned that Estrada was staying at the Deluxe Inn. He was dropped off there and joined her in the room. Defendant went to sleep. He was arrested later that day outside of Estrada's house.

7

III. *Jury Instructions*

As relevant here, the trial court instructed the jury on felony murder with CALCRIM No. 540A: "Defendant Jorge Gonzalez is charged in Count One with murder, under a theory of felony murder. [¶] To prove that Defendant Jorge Gonzalez is guilty of first degree murder under this theory, the People must prove that: [¶] 1. Defendant Jorge Gonzalez committed or attempted to commit robbery; [¶] 2. The defendant intended to commit robbery; [¶] AND [¶] 3. While committing or attempting to commit robbery, the defendant caused the death of another person. [¶] A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent."

The jury was instructed on shooting at an occupied motor vehicle with CALCRIM No. 965. The People were required to prove: "1. The defendant willfully and maliciously shot a firearm; [¶] 2. The defendant shot the firearm at an occupied motor vehicle; [¶] AND [¶] 3. The defendant did not act in self-defense." (CALCRIM No. 965.) The instruction further stated "[s]omeone commits an act willfully when he does it willingly or on purpose," and "[s]omeone acts maliciously when he intentionally does a wrongful act when he acts with the unlawful intent to disturb, defraud, annoy, or injure someone else." The jury was also given an accident instruction, which provided that defendant was "not guilty of shooting at an occupied vehicle . . . if he acted without the intent required for that crime, but acted instead accidentally." (CALCRIM No. 3404.) Therefore, defendant could not be found guilty of this charged offense unless the jury was "convinced beyond a reasonable doubt that he acted with the required intent."

The jury was then instructed with CALCRIM No. 3115 on the principal armed with a firearm allegation under section 12022, subdivision (a)(1). The

8

instruction stated, in pertinent part: "A principal is armed with a firearm when that person: [¶] 1. Carries a firearm or has a firearm available for use in either offense or defense in connection with the [murder]; [¶] AND [¶] 2. Knows that he or she is carrying the firearm or has it available." (CALCRIM No. 3115.) For the firearm use allegation under section 12022.53, subdivision (b), the jury was instructed that it must find that defendant "intentionally" did any of the following: displayed the weapon in a menacing manner, hit someone with the weapon, or fired the weapon. (CALCRIM No. 3146.) For the remaining two firearm use allegations under section 12202.53, the jury was required to decide whether defendant "personally and intentionally discharged a firearm," and if so, whether defendant's act caused death. (CALCRIM No. 3150, § 12022.53, subds. (c), (d).) Specifically, the People had to prove that defendant "intended to discharge the firearm."

## IV.    *Murder Conviction*

In 2013, a jury convicted defendant of first degree felony murder (§ 187, subd. (a)).[4] The jury further found true the special circumstance that the murder was committed during the commission of the robbery or attempted robbery (§ 190.2, subd. (a)(17)). The jury found not true the allegation that a principal was armed with a firearm (§ 12022, subd. (a)(1)), and that defendant personally and intentionally discharged a firearm which caused great bodily injury and death to Rosales (§ 12022.53, subds. (b)-(d)). The jury found defendant not guilty of shooting at an occupied motor vehicle (§ 246). The trial court sentenced defendant to life without the possibility of parole.

On appeal, this court modified the abstract of judgment but otherwise affirmed the judgment.

---

[4]     Defendant was tried jointly with Estrada and Garcia.

V.    *Petition for Resentencing*

In 2019, the trial court summarily denied defendant's petition for resentencing under section 1172.6, finding that he was ineligible for relief as a matter of law based on the jury's special circumstance finding.  That same year, the court denied a second petition for resentencing for the same reason.

In 2020, defendant filed a habeas corpus petition, contending that he was entitled to relief under section 1172.6.   Defendant argued that the trial court erred in denying his prior petitions for resentencing in light of *People v. Torres* (2020) 46 Cal.App.5th 1168, which held in part that a jury's special circumstance finding did not per se render defendant ineligible for relief.  The trial court denied the petition.  Defendant appealed from this order.  We construed the appeal as one from an order denying a petition for resentencing under section 1172.6 and accepted the Attorney General's concession that defendant demonstrated a prima facie case for relief.  The matter was remanded to the trial court with directions to appoint counsel, issue an order to show cause, and conduct an evidentiary hearing.

On remand, counsel was appointed for defendant and the parties filed additional briefing.  Following an evidentiary hearing, the trial court denied defendant's petition for resentencing under section 1172.6.  The court found beyond a reasonable doubt that defendant was the actual killer.  In the alternative, the court found defendant was a major participant in the underlying felony who acted with reckless indifference to human life.

Defendant timely appealed.

## DISCUSSION

I.    *Senate Bill No. 1437 and Standard of Review*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) and subsequent related legislation limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (See generally *People v. Reyes* (2023) 14 Cal.5th 981, 986; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*), superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

Senate Bill 1437 added section 188, subdivision (a)(3), which provides that "to be convicted of murder, a principal in a crime shall act with malice aforethought" and malice "shall not be imputed to a person based solely on his or her participation in a crime." Senate Bill 1437 also amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person (1) was the actual killer, (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor, or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*Gentile, supra*, 10 Cal.5th at p. 842.)

For purposes of section 189, subdivision (e), an " 'actual killer' " is "the actual perpetrator of the killing, i.e., the person (or persons) who personally committed the homicidal act." (*People v. Vang* (2022) 82 Cal.App.5th 64, 88; see also *People v. Garcia* (2020) 46 Cal.App.5th 123, 152 [under § 190.2, subd. (b), "[t]he actual killer is the person who personally kills the victim"].)

11

However, Senate Bill 1437 did not alter "the long-standing rule that a defendant is guilty of felony murder if, while intending to commit a qualifying felony, he personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental." (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1243–1244.)

Senate Bill 1437 also created a procedure, now codified at section 1172.6, for a person convicted of murder under the former law to be resentenced if the person could no longer be convicted of those crimes under current law. (*People v. Lewis, supra*, 11 Cal.5th at p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.) A defendant commences that procedure by filing a petition containing a declaration stating, among other things, that the defendant could not presently be convicted of murder under current law. (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

If a petition establishes a prima facie case for relief, the trial court must appoint counsel if requested, issue an order to show cause, and hold an evidentiary hearing at which the parties may offer new or additional evidence. The trial court sits as an independent factfinder to determine beyond a reasonable doubt whether the defendant is guilty of murder under a valid theory. (§ 1172.6, subds. (b)(3), (c), & (d)(1); *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) We review a trial court's findings after a section 1172.6, subdivision (d)(3) evidentiary hearing for substantial evidence. (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)

II.    *Actual Killer*

Defendant contends the trial court's finding that he was the actual killer was precluded by the jury's not true finding on the firearm allegations (§§ 12022, subd. (a)(1), 12022.53, subds. (b)-(d)) and acquittal on the shooting

at an occupied motor vehicle charge (§ 246).  This claim of error raises an issue of law that we review de novo.  (*People v. Lopez-Barraza* (2025) 110 Cal.App.5th 1227, 1240.)

Defendant relies on *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*) and its progeny.[5]  In *Cooper*, the defendant was convicted of first degree murder and kidnapping in a scheme involving two coparticipants. (*Cooper, supra*, 77 Cal.App.5th at p. 397.)  The jury found true the allegation that a principal was armed with a firearm during both offenses, but it acquitted the defendant of the charge of being a felon in possession of a firearm.  (*Ibid*.)  At the section 1172.6 hearing, the parties did not submit any new evidence, and the trial court, in reliance on the trial transcripts and the appellate opinion, found the defendant was a major participant in the underlying kidnapping and acted with reckless indifference to human life. (*Id*. at p. 398.)  The court reached "this conclusion based in part on its belief that [the defendant] possessed and fired a gun."  (*Id*. at p. 398.)

---

[5]     *Cooper* has been cited with approval by several appellate courts.  (See *People v. Lopez-Barraza, supra,* 110 Cal.App.5th at page 1248 [finding no disagreement with *Cooper* and concluding resentencing court is precluded from deciding new issues based on factual findings "that are inconsistent with facts *necessarily* found by the jury"]; *People v. Henley* (2022) 85 Cal.App.5th 1003 [following *Cooper*]; *People v. Arnold* (2023) 93 Cal.App.5th 376,  385–387 [aligning with *Cooper* in concluding that resentencing court erred in failing to give preclusive effect to jury's not-true finding on knife-use enhancement].)  However, in *People v. Hart* (2025) 113 Cal.App.5th 1099, the court distinguished *Cooper* and relied on a California Supreme Court case, *People v. Santamaria* (1994) 8 Cal.4th 903, 921–922, to conclude a jury's not true finding on a personal firearm use allegation did not preclude the resentencing court from relying on an actual killer theory in determining the defendant was guilty of felony murder.  (*Hart, supra,* at pp. 1114–1115.)

13

The appellate court reversed, concluding that "a trial court cannot deny relief in a section [1172.6] proceeding based on findings that are inconsistent with a previous acquittal when no evidence other than that introduced at trial is presented." (*Cooper, supra*, 77 Cal.App.5th at p. 398.) In so doing, *Cooper* expressly did not rely on the doctrine of collateral estoppel, but on analogous case law under the Three Strikes Reform Act of 2012 (Three Strikes law) holding that "a trial court could not conclude that a defendant was ineligible for resentencing . . . by relying on factual determinations about the defendant's gun use that 'turn[ed] acquittals and not-true enhancement findings [at trial] into their opposites.' " (*Cooper, supra*, at p. 413.)

The Attorney General contends *Cooper* was wrongly decided and that we should apply the collateral estoppel doctrine in a section 1172.6 proceeding.[6] We need not engage in this debate. Assuming *Cooper* was correctly decided, we conclude that the jury's findings do not preclude the trial court's subsequent finding that defendant was the actual killer.

There was sufficient evidence at trial that defendant was the actual killer. According to defendant's own testimony, Rosales pointed a firearm in his direction as he approached the vehicle. A struggle over the firearm

---

[6] Collateral estoppel is " 'grounded on the premise that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." ' [Citation.]" (*People v. Strong, supra,* 13 Cal.5th at pp. 715–716.) "It applies in criminal as well as civil proceedings." (*Id*. at p. 716.) The doctrine "bars relitigation of issues earlier decided 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Ibid*.)

ensued, and defendant ultimately gained complete control of the firearm. Prior to its discharge, defendant had his right hand on the handle of the firearm with his right index finger on the trigger. Defendant testified he did not intentionally pull the trigger, rather it was an accident or unintentional. (See *People v. Beaudreaux, supra,* 100 Cal.App.5th at pp. 1243–1244 ["a defendant is guilty of felony murder if ... he personally performs an act that causes death, regardless of whether the fatal act was intentional or accidental"].)[7] This evidence is consistent with the jury's not true findings on the firearm allegations and the acquittal of shooting at an occupied motor vehicle. Both the section 12022.53 allegations and the shooting at an occupied motor vehicle charge require an intentional discharge of the firearm. Thus, these jury findings are consistent with the trial court's subsequent finding that defendant was the actual killer, who caused Rosales' death, albeit accidentally. In the same vein, the principal use allegation under section 12022, subdivision (a)(1), requires proof that defendant carried the firearm or had it available in connection with the murder, and that he did so knowingly. The jury's not true finding aligns with the evidence that defendant was not in possession of a firearm prior to approaching Rosales. It also does not contradict the trial court's finding that defendant was the actual killer, who took the murder weapon away from Rosales just prior to the shooting. Therefore, we conclude there was nothing incompatible with the trial court's determination that defendant was the actual killer and the jury's not true firearm findings and acquittal of shooting at an occupied motor vehicle.

---

[7] We reject defendant's assertion that Rosales killed himself by causing the gun to discharge while struggling with defendant. This is not supported by the evidence.

Accordingly, the trial court did not err in determining that the defendant was the actual killer.[8]

**DISPOSITION**

The trial court's order denying defendant's section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, P. J.

We concur:

TAMZARIAN, J.

COGLIATI, J.[*]

---

[8]   In light of our conclusion, we do not reach the trial court's alternative grounds for denying his section 1172.6 petition, finding that defendant was a major participant in the underlying felony who acted with reckless indifference to human life.

[*]   Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.